```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
_____
                                   )
JAIMIE SANTAGATA,                  )
                                   )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )
                                   )   C.A. No. 18-428 WES
                                   )
MINILUXE, INC.,                    )
                                   )
        Defendant.                 )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

Before the Court is Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint ("Def. Mot."), ECF No. 22. For the reasons set forth below, Defendant's Motion is GRANTED IN PART and DENIED IN PART. Specifically, the Motion is GRANTED as to the Fair Labor Standards Act ("FLSA") failure to pay claim in Count I, and as to Counts II and VI; it is DENIED as to the FLSA retaliation claim in Count I, and as to Counts III, IV, and V.

I. Background

As set forth in her Complaint, Plaintiff Jaimie Santagata ("Plaintiff"), a licensed cosmetologist, began working for MiniLuxe, Inc. ("Defendant") as a nail and wax technician in March 2016, maintaining positive work performance. Third Am. Compl.

("Compl.") ¶¶ 10-12, ECF No. 18. On June 27, 2018, she sent a letter to Defendant's corporate office complaining about the following: withholding of tip compensation, denial of lunchbreaks and other regular breaks, denial of compensation for working through such breaks as required by Defendant, and denial of time and one-half pay for holidays and Sundays worked. Id. ¶¶ 14-21. Plaintiff's counsel subsequently sent a "formal letter" to Defendant on July 9, 2018. Id. ¶ 22.

On July 23, 2018, Plaintiff filed a Complaint in Rhode Island Superior Court regarding these grievances. Id. ¶¶ 26; see Compl., ECF No. 1-1. Plaintiff alleges she was then subjected to retaliatory behavior by Defendant, including: being wrongfully taken off the work schedule; having clients falsely informed that she was "not going to be available"; being "ostracized in the workplace" by other employees at management's direction; being "ridiculed" and "mocked" by management for taking breaks in an attempt to make her quit her job. Id. ¶¶ 23-27.

Plaintiff took medical leave from August 31, 2018 to October 30, 2018, and she alleges that during that leave, management informed her clients that she "no longer worked for the company." Id. ¶¶ 32-34. She claims that upon her return she again confronted a hostile environment; specifically, that she received less "walk-in" priority than less tenured employees and was "subject[ed] to an unprovoked and malicious battery by her supervisor in the

2

workplace" — all in an attempt to "impact [Plaintiff's] income". Id. ¶¶ 32-34.

On November 8, 2019, Plaintiff was given a "Performance Improvement Review," after which she left work sick. Id. ¶¶ 35-39. Defendant viewed the situation differently, sending her a notice saying that she had "walked off the job." Id. ¶ 40. Subsequently, Plaintiff wanted to return to work but heard nothing from Defendant. Id. In reviewing her application for unemployment benefits, the Rhode Island Department of Labor and Training held that Plaintiff was discharged, but not for any misconduct. Id.

Plaintiff then brought this action alleging violations of the FLSA, 29 U.S.C. § 201 et seq.; the Rhode Island Minimum Wage Act, R.I. Gen. Laws § 28-12-1 et seq.; the Rhode Island Sunday Pay Act, R.I. Gen. Laws § 25-3-3; the Rhode Island Whistleblowers' Protection Act, R.I. Gen. Laws § 28-50-1; the Rhode Island Parental and Family Medical Leave Act, R.I. Gen. Laws § 28-48-1 et seq.; and the Family and Medical Leave Act of 1993 ("FLMA"), 29 U.S.C. § 2601 et seq. See Compl. ¶¶ 43-66. Plaintiff also brings allegations of defamation and false light. Id. ¶¶ 67-75. Defendant now moves to dismiss all six counts of the Complaint. Def. Mot. 1.

II.  Standard of Review

When a defendant moves to dismiss a plaintiff's complaint

pursuant to Federal Rules of Civil Procedure 12(b)(6), the court must accept as true all of the plaintiff's well-pleaded facts and make all reasonable inferences in the plaintiff's favor. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). In order to defeat a motion to dismiss for failure to state a claim, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

III. Analysis

    A.   Fair Labor Standards Act (Count I)

Plaintiff asserts claims for both failure to pay and retaliation under the FLSA. Compl. ¶¶ 43-48.

        1. Failure to Pay

The FLSA requires employers to pay their employees minimum wage and overtime pay, making failure to do so unlawful. Perez v. Lorraine Enters., Inc., 769 F.3d 23, 27 (1st Cir. 2014) (minimum wage); De Jesus-Rentas v. Baxter Pharmacy Servs. Corp., 400 F.3d 72, 74 (1st Cir. 2005) (overtime pay). The "FLSA provides that employees may initiate actions against their employers" for violating three provisions: 29 U.S.C. § 206 (minimum wage); 29 U.S.C. § 207 (overtime compensation); and 29 U.S.C. § 215(a)(3)(retaliation). Chebotnikov v. LimoLink, Inc., No. CV 14-13475-FDS, 2017 WL 2888713, at *15 (D. Mass. July 6, 2017).

4

Plaintiff makes two sets of failure to pay allegations, one related to tip compensation and the other related to break compensation. <u>See</u> Compl. ¶¶ 16-18. As for the tip allegations, Plaintiff alleges that her tips were missing from her tip envelope and that Defendant refused to release her tips until she completed certain chores. <u>Id.</u> ¶¶ 17-18. As for the break allegations, Plaintiff alleges "be[ing] denied lunch breaks and regular breaks . . . [and being] denied compensation for this mandatory worktime." <u>Id.</u> ¶ 16. Defendant argues that the failure to pay claim should be dismissed because Plaintiff has not adequately pled that she was denied minimum wage or overtime pay, and Plaintiff's claim that Defendant withheld tips fails "where it is not tied to a minimum wage or overtime claim under the FLSA." Def. Mot. 4-5.

Under section 203(m) of the FLSA, employers can pay certain service employees a reduced minimum wage, if the employees earn the full minimum wage through tips, known as a tip credit. <u>Levi v. Gulliver's Tavern Inc.</u>, No CV 15-216 S, 2016 WL 552469, at *2 (D.R.I. Feb. 10, 2016). However, in order for an employee to bring a tip credit claim, her employer must actually take the tip credit – "[i]f employers deduct from employees' tips and still pay them the full minimum wage, the sharing of tips does not implicate Section 203(m) . . ." <u>Id.</u> (dismissing the plaintiffs' tip sharing claims where the plaintiffs did not allege that they received a reduced minimum wage that the defendant offset with tips).

5

Here, Plaintiff has failed to allege a base wage or any payment structure whatsoever.  See generally Compl.  Plaintiff has given the Court no "mechanism [to infer how] the FLSA may have been violated[.]"  Pruell v. Caritas Christi, 678 F.3d 10, 14 (1st Cir. 2012) (emphasis omitted).  Furthermore, the Complaint does not allege the requisite facts to state a sufficient unlawful tip pool or tip credit claim.  See Levi, 2016 WL 552469, at *2. Therefore, as concerns the allegedly withheld tips, Plaintiff has failed to state a claim for failure to pay under the FLSA.

Regarding the break allegations, if an employee is forced to work during a meal break without pay, and it results in a work-week in excess of forty hours, it may constitute a violation of FLSA's overtime provisions.  See 29 U.S.C. § 207(a)(1); Manning v. Boston Medical Center Corp., 725 F.3d 34, 44-47 (1st Cir. 2013) (finding the plaintiffs' complaint sufficient to state a claim under FLSA that workers were required to work "through their designated breaks," resulting in a more than 40-hour work week). Here, Plaintiff has not alleged that she worked more than forty hours per week, which is the "statutory minimum to trigger the FLSA overtime compensation requirements."  Mercado-Rodriguez v. Hernandez Rosario, 150 F. Supp. 3d 171, 174 (D.P.R. 2016).  Without knowing Plaintiff's work hours, the "amended complaint does not provide examples (let alone estimates as to the amounts) of such unpaid time."  Pruell, 678 F.3d at 14.  Accordingly, as concerns

6

the allegedly withheld overtime compensation, Plaintiff has not stated a claim for failure to pay under the FLSA.

       2. Retaliation

"The elements of a retaliation claim under the FLSA require, at minimum, a showing that (1) the plaintiff engaged in a statutorily protected activity, and (2) his employer thereafter subjected him to an adverse employment action (3) as a reprisal for having engaged in protected activity." Claudio-Gotay v. Becton Dickinson Caribe, Ltd, 375 F.3d 99, 102 (1st Cir. 2004) (citing Blackie v. Maine, 75 F.3d 716, 722 (1st Cir. 1996)). Defendant argues that Plaintiff "does not allege that she sought to assert rights expressly protected by the FLSA prior to any alleged retaliatory conduct," and that Defendant did not take any adverse employment action against her. Def. Mot. 5-6.

The Court finds that Plaintiff's formal letter to Defendant's corporate office and her filed Complaint in Superior Court - both of which expressed concerns over the failure to pay tips and working-lunchbreak pay - sufficiently qualify as statutorily protected activity at this stage. Compl. ¶¶ 21-22, 26; see also 29 U.S.C. § 215(a)(3); Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 11, 14 (2011) ("[T]he phrase 'filed any complaint' contemplates some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as

7

part of its business concerns."); Claudio-Gotay, 375 F.3d at 102 (to engage in statutorily protected activity, "the employee must . . . file . . . an action adverse to the employer . . . or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA") (quoting McKenzie v. Renberg's Inc., 94 F.3d 1478, 1486 (8th Cir. 1998)).

As for the second element – "materially adverse employment action" – Plaintiff alleges that after filing the two letters to corporate, she was "removed from the regularly posted schedule" and that "at least 6 (six) clients attempted to book appointments with the Plaintiff through the salon, but were falsely informed that she was 'not available' and was 'not going to be available.'" Compl. ¶ 23. Plaintiff complains of further retaliatory behavior after she filed a Complaint in the instant case in state Superior Court, including, inter alia, being "ridiculed and mocked" at work and "scheduled for abbreviated time for services" with clients. See id. ¶ 26.

Materially adverse employment activity requires a "case-by-case inquiry" decided on an objective basis. Blackie, 75 F.3d at 725 (citations omitted). "Typically, the employer must either (1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities, or (2) withhold from the employee

8

an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service." Id. (citations omitted).

At minimum, taking Plaintiff's allegations as true, the fact that Plaintiff was taken off the schedule, and had her role in the salon reduced, amounts to a divestment of responsibilities under Blackie. See Compl. ¶ 23. Accordingly, Plaintiff has sufficiently alleged materially adverse employment action, and since Defendant does not challenge the causation element, Plaintiff has stated a cognizable claim for retaliation under the FLSA.[1]

Thus, Defendant's Motion to Dismiss is GRANTED as to Plaintiff's FLSA failure to pay claim, but Defendant's Motion to Dismiss is DENIED as to Plaintiff's FLSA retaliation claim.

B. Rhode Island Wage Payment Statutes (Count II)

In this Count, Plaintiff alleges violations of the Rhode Island Minimum Wage Act ("RIMWA"), R.I. Gen. Laws § 28-12-4.1[2],

---

[1] Even if an employer's actions do not otherwise violate FLSA, the employer can still be held liable for retaliating against an employee who took action against it, so long as that employee's action operates under a "reasonable belief" that the employer is violating FLSA. See Claudio-Gotay, 375 F.3d at 102 (quoting EEOC v. HBE Corp., 135 F.3d 543, 554 (8th Cir. 1998)).

[2] It is not entirely clear that Plaintiff asserts a claim under the RIMWA. See Compl. ¶¶ 49-51. Although Plaintiff cites to R.I. Gen. Laws § 28-12-4.1, she only references Defendant's refusal to pay "premium pay for regular hours worked on Sundays and holidays." Compl. ¶ 50. Like in Count I, to the extent Plaintiff intends to bring a claim under RIMWA, Plaintiff has failed to adequately allege routine work hours, base salary, or

9

and the Rhode Island Sunday Pay Act ("Sunday Pay Act"), R.I. Gen. Laws § 25-3-3. Compl. ¶¶ 49-51. Defendant moves to dismiss Count II on the basis that there is no private right of action under the Sunday Pay Act. Def. Mot. 9-10.

Citing Casperson v. AAA Southern New England, No. PC-2014-6139, 2016 WL 6107473, at *3 (R.I. Super. Oct. 13, 2016), Defendant argues that no private right of action exists under the Sunday Pay Act. Id. The Rhode Island Superior Court in Casperson relied on this Court's reasoning in Hauser v. Rhode Island Department of Corrections, 640 F. Supp. 2d 143 (D.R.I. 2009), granting the defendant's motion for judgment on the pleadings as to the plaintiff's claim under the Sunday Pay Act for failure to pay premium compensation for Sunday work, stating that "[t]here can be little doubt that had the General Assembly deemed it appropriate or necessary to afford employees a private right of action against employers to enforce the [statute], it would have expressly done so." Casperson, 2016 WL 6107473, at *3 (quoting Hauser, 640 F. Supp. 2d at 146). This still rings true.

---

any details of her employment contract. See Compl. ¶¶ 16-18, 49-51; see also D'Arezzo v. Providence Ctr., Inc., 142 F. Supp. 3d 224, 238-9 (D.R.I. 2015) (holding that in order to state a claim under RIMWA, which parallels its federal equivalent, a plaintiff must show either that in any given workweek, the plaintiff's compensation divided by hours worked dips below minimum wage or that the employee was required to perform "additional work . . . not bargained for in [the] employment contract").

10

Accordingly, Defendant's Motion to Dismiss Plaintiff's claims under the Sunday Pay Act (and the RIMWA to the extent it is alleged) is GRANTED. These claims are dismissed without prejudice to allow Plaintiff to seek state administrative remedies.

C. Rhode Island Whistleblowers' Protection Act (Count III)

To make out a prima facie claim under the Rhode Island Whistleblowers' Protection Act ("RIWPA"), "the plaintiff must demonstrate: 1) that she engaged in protected whistleblowing conduct as defined by the Act; 2) that she suffered an adverse employment action contemporaneously or thereafter; and 3) that the adverse action was causally related to the protected conduct." Chagnon v. Lifespan Corp., No. CV 15-493S, 2017 WL 3278952, at *2 (D.R.I. June 19, 2017), report and recommendation adopted, No. CV 15-493 S, 2017 WL 3278858 (D.R.I. Aug. 1, 2017) (citation omitted). Defendant moves to dismiss Plaintiff's RIWPA claim because "her factual allegations fall short of the kind of employer conduct that constitutes materially adverse employment action." Def. Mot. 10. No other elements are challenged. See id. at 10-11.

The standard for what constitutes materially adverse employment action under the RIWPA is generally the same as it is under the FLSA. See Russo v. State, Dept. of Mental Health, Retardation and Hospitals, 87 A.3d 399, 408 (R.I. 2014) (interpreting the term in light of federal case law). For the same reasons outlined in the Court's discussion of Plaintiff's

11

FLSA claims, she has sufficiently alleged materially adverse action under the RIWPA. See supra III(A)(2). Therefore, Defendant's Motion to Dismiss Count III is DENIED.

   D. Rhode Island Parental and Medical Family Leave Act and Family Medical Leave Act (Counts IV and V)

Both the Rhode Island Parental and Medical Family Leave Act ("RIPFMLA") and FMLA "prohibit an employer from retaliating against an employee for taking a medical leave." Bellisle v. Landmark Med. Ctr., 207 F. Supp. 3d 153, 165 (D.R.I. 2016). Under both statutes, "[a]n employee can make a prima facie showing of illegal retaliation if she demonstrates that (1) she availed herself of a protected right under the FMLA; (2) an employment decision adversely affected her; and (3) there is a causal connection between the employees' [sic] protected activity and the employer's adverse employer action." Id. (citation omitted).

Once again, Defendant moves to dismiss both counts only on the grounds that Plaintiff fails to allege a materially adverse employment action, the second element for both causes of action. See Def. Mot. 11-12. Plaintiff alleges that after taking medical leave, management retaliated by: reducing Plaintiff's hours from full time to part time; giving Plaintiff "virtually no clients" despite her being in "front" of the schedule book, giving Plaintiff "menial tasks" like "shaking nail polish bottles while less tenured technicians were given walk-in clients"; removing Plaintiff "from

12

the online booking system"; informing clients "that Plaintiff no longer worked for the company"; and singling out Plaintiff for a "Performance Improvement Review[.]"  Compl. ¶¶ 34(a)-(e), 35. Given the foregoing, Plaintiff has sufficiently alleged materially adverse activity by Defendant.  See infra III(A)(2).

Accordingly, Plaintiff has stated a claim under both the RIPFMLA and the FMLA, and Defendant's Motion to Dismiss is DENIED as to Counts IV and V.

E.   Defamation and False Light Claims (Count VI)

In this Count, Plaintiff brings claims for defamation, defamation per se, and false light.  Compl. ¶ 16.  Specifically, Plaintiff alleges that Defendant defamed her by falsely informing at least six of Plaintiff's prospective clients trying to book appointments with her that she was "not available" or "not going to be available," when she was actually available to work and had never requested vacation days. Compl. ¶¶ 23-25.  Plaintiff alleges she lost business due to Defendant's statements.  Id.  Plaintiff also claims that on a separate occasion, "while [Plaintiff was on] medical leave, clients were informed that Plaintiff no longer worked for the company[.]"  Id. ¶ 34(e).  Defendant argues that "[e]ven if the statement [were] false, it is innocuous" and does not rise to the level of defamation.  Def. Mot. 13.

In order to be defamatory, "a plaintiff must show that the statement is 'false and malicious, imputing conduct which

13

injuriously affects a man[']s reputation, or which tends to degrade him in society or bring him into public hatred and contempt . . . .'" Burke v. Gregg, 55 A.3d 212, 218 (R.I. 2012) (quoting Marcil v. Kells, 936 A.2d 208, 212 (R.I. 2007)). "The decisive question is what the person or persons to whom the communication was published reasonably understood as the meaning intended to be expressed." Marcil, 936 A.2d at 213 (citation omitted). Whether a statement is defamatory is a question of law for the Court to decide. Budget Termite & Pest Control, Inc. v. Bousquet, 811 A.2d 1169, 1172 (R.I. 2002).

The context of alleged defamatory statements is important to the analysis. See Budget Termite & Pest Control, 811 A.2d at 1172, 1174-75 ("In determining whether a statement is merely an opinion that does not imply the existence of undisclosed defamatory facts, we consider the . . . context.") (internal citation omitted). Here, where customers were told that Plaintiff was no longer working at the salon – but not that she was fired – there was no underlying implication of a defamatory fact, as the customers could have believed she voluntarily left.[3] See id. at 1174 (finding that cartoon did not constitute defamation because "the statements

---

[3] Plaintiff argues that Defendant's statements have prevented her from getting another job in the beauty industry, but the causal connection between that and the statements is not clear. Pl.'s Mem. in Supp. of Her Obj. and Opp'n to Def.'s Mot. to Dismiss Pl.'s Am. Compl. 24-25, ECF No. 25-1.

14

contained therein were not assertions of fact but rhetorical, exaggerated means of expressing opinions that did not imply the existence of undisclosed defamatory facts about plaintiff") (internal citation and quotation marks omitted). Accordingly, Plaintiff has not stated a claim for defamation.

Plaintiff also alleges defamation per se, a sub-category of defamation involving actions that do not require proof of special damages. See Marcil, 936 A.2d at 212. Specifically, she alleges Defendant made statements which fall under the third category of defamation per se: statements that "charge[] improper conduct, lack of skill, or integrity in ones [sic] profession or business" in a way that is "calculated to cause injury." Id.; see also Compl. ¶¶ 67-75. "[T]he disparaging words must affect the plaintiff [in a way] that is peculiarly harmful" to the trade or business in which he or she is engaged. Marcil, 936 A.2d at 213. Plaintiff has offered no explanation why the statements "not available" or "no longer worked for the company" were "peculiarly harmful" to cosmetologists, and so fails to state a claim of defamation per se. See id.; see also Compl. ¶¶ 23, 34(e).

To recover for false light, a plaintiff must establish that there has been some "publication of a false or fictious fact which implies an association which does not exist; [and] [t]he association which has been published or implied would be objectionable to the ordinary reasonable man under the

15

circumstances[.]" R.I. Gen. Laws § 9-1-28.1(a)(4)(i). "Unlike defamation, a false-light action requires that a plaintiff be given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position." Cullen v. Auclair, 809 A.2d 1107, 1112 (R.I. 2002) (citation and internal quotations omitted). Plaintiff has not adequately alleged such "major misrepresentation of [her] character, history, activities or beliefs" that a reasonable person might take "serious offense," and accordingly she has not stated a false light claim. See id.

Therefore, Defendant's Motion to Dismiss is GRANTED as to Count VI.

IV. Conclusion

In conclusion, the Defendant's Motion to Dismiss is GRANTED as to the Count I FLSA failure to pay claim and DENIED as to the Count I FLSA retaliation claim. Moreover, Defendant's Motion to Dismiss is GRANTED as to Counts II and VI. Finally, Defendant's Motion to Dismiss is DENIED as to Counts III, IV, and V.

IT IS SO ORDERED.

/s/ William E. Smith
_____
William E. Smith
District Judge
Date: May 11, 2020

16